The CITY OF PORTLAND, OREGON,
Petitioner,

v.

FEDERAL MARITIME COMMISSION
and United States of America,
Respondents,

Japan Line, Ltd., et al., Intervenors.

No. 24182.

United States Court of Appeals,
District of Columbia Circuit.

Argued June 4, 1970.

Dated June 12, 1970.

Mr. Edward Schmeltzer, Washington, D. C., for petitioner.

Mr. Edward G. Gruis, Attorney, Federal Maritime Commission, of the bar of the Supreme Court of Indiana, pro hac vice, by special leave of court, for respondents. Messrs. James L. Pimper, General Counsel, and Paul J. Fitzpatrick, Attorney, Federal Maritime Commission, entered appearances for respondent Federal Maritime Commission.

Mr. Irwin A. Seibel, Attorney, Department of Justice, entered an appearance for respondent United States of America.

Mr. Charles F. Warren, Washington, D. C., for intervenors.

Before WRIGHT, LEVENTHAL and ROBB, Circuit Judges.

### PER CURIAM:

This matter came before the court on petitioner's motion for expeditious consideration of a request for a stay of an order of the Federal Maritime Commission approving, without a hearing, a pooling agreement among intervenor Japanese shipping operators establishing a three-vessel containership service in the trans-Pacific trade between Japan, Oregon and Washington. Petitioner City's objection to the order is based on its claim that an agreement not to service Portland exists among intervenors.

■ Generally an administrative approval without the benefit of a hearing is to be avoided, particularly where, as here, what is involved is an approval under § 15 of the Shipping Act and the case has antitrust ramifications. *See* Marine Space Enclosures, Inc. v. Federal Maritime Comm'n, 137 U.S.App.D.C. 9, 420 F.2d 577 (1969). Though the documented evidence offered by petitioner is fragmentary, portions of it suggest that the shippers have made a joint decision by majority vote to exclude Portland from service, at least for the time being.

■ One of the exhibits presents the possibility that one of the Japanese operators—who have served Portland historically—would have been willing to serve Portland with containerships, but was bound by majority vote. Petitioner contends that whereas normally determinations as to ports are made by each operator, so that competition might well have yielded containership service for Portland, it is the agreement which the Commission has approved under § 15, which effectively forecloses it as a port of call. A protest presenting this kind of issue should not have been disposed of without a hearing on the basis solely of submissions by the applicants, possibly including submissions in oral conversations.

The Commission contends that it can fully discharge its duty to protect the public interest in this matter by conducting investigations subsequent to approval of the agreement. Such a position may be espoused only with great caution, since once the agreement is approved by the Commission, it will be

faced with the burden of demonstrating that the operations as they have developed are contrary to the public interest, whereas before it approves such an agreement, the applicants seeking approval must show that the agreement comports with the public interest in all respects. With such a burden on the Commission, the proceeding is likely to involve greater delay. *Compare* Atlantic Refining Co. v. Public Service Comm'n, 360 U.S. 378, 388 ff, 79 S.Ct. 1246, 3 L.Ed.2d 1312 (1959). Moreover, in these matters what starts as a temporary decision may operate to extend or perpetuate itself. Thus shippers having a choice may make e.g. terminal arrangements at Seattle, to take the initial service and to obviate unnecessary questions as to future service, and these arrangements though terminable in theory may endure in fact. *Compare* Pennsylvania Gas and Water Co. v. FPC, 138 U.S.App.D.C. 298, 427 F.2d 568 (March 19, 1970).

There may be room for the Commission to issue approvals without a hearing on a provisional basis—for a limited time, pending the conduct of a hearing and subject to protective conditions. *See* Atlantic Refining Co. v. Public Service Comm'n, *supra*. This might be available in the public interest, to take care of emergencies, or possibly even to gather the important information from the actual operations of an experiment which would not be meaningfully available solely from a hearing. *Compare* American Airlines, Inc. v. CAB, 123 U.S.App.D.C. 310, 359 F.2d 624 (en banc), cert. denied, 385 U.S. 843, 87 S.Ct. 73, 17 L.Ed.2d 75 (1966).

 In view of the inadequacies in the Commission's procedure, we conclude

that petitioner has demonstrated the likelihood of a successful challenge to the order to be reviewed. On the other hand, we recognize that a stay of the order would impede the development of a service beneficial to the citizens of the Northwest United States. Therefore, although we agree that issuance of a stay is proper, we delay the effectiveness of that order for a period of sixty days, during which time the Commission can consider, upon the basis of an expedited hearing, whether to approve this special pooling agreement, and any ancillary agreements. In order to expedite the holding of a hearing the record is herewith remanded to the Commission. To avoid any misunderstanding we expressly set forth that the Commission not only has the authority to conduct such a hearing, but also that it may amend its past order or modify the order by attaching conditions.[1]

We thus pattern our order after the authority of a reviewing court to remand for hearing, see 28 U.S.C. § 2347 (1966), although the technical status of our order is one deferring a stay for a limited time in order to give the Commission the opportunity to hold a hearing. If the Commission does not order a hearing petitioner may apply to make the stay effective forthwith. If the Commission considers that more time than 60 days is required for sound completion of even expedited procedures, it may request a further delay of the stay, but at that time it should be prepared to state reasons why this court should not impose a conditional stay requiring the rotation of service among the ports involved[2] pending final review and determination.

So ordered.

---

1. *See* Anchor Line Limited v. Federal Maritime Comm'n, 112 U.S.App.D.C. 40, 299 F.2d 124 (1962); *cf.* American Farm Lines v. Black Ball Freight Service, 397 U.S. 532, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970).

2. Presumably the possibility of rotation of ports served will be one of the matters aired at the hearing.